[Cite as *McCarty v. Pedraza*, 2014-Ohio-3262.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

| | | |
|---|---|---|
| DAVID C. McCARTY, et al. | : | |
| | : | Appellate Case No. 2013-CA-42 |
| Plaintiffs-Appellees | : | |
| | : | Trial Court Case No. 11-CV-10 |
| v. | : | |
| | : | |
| MIGUEL A. PEDRAZA, Esq. | : | (Civil Appeal from Clark |
| | : | County Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of July, 2014.

. . . . . . . . . . .

DANIEL C. HARKINS, Atty. Reg. #0029750, 333 North Limestone Street, Suite 203, Post Office Box 1125, Springfield, Ohio 45501-1125
        Attorney for Plaintiffs-Appellees

MIGUEL A. PEDRAZA, Atty. Reg. #0030236, 1805 Marinette Drive, Springfield, Ohio 45503
        Defendant-Appellant, *pro se*

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Miguel Pedraza appeals from a legal-malpractice judgment against him in favor of his former clients David and Cynthia McCarty, essentially for failing to timely file an answer

and counterclaim to the litigation against them. The trial court correctly entered summary judgment on the liability issue of negligence and, after an evidentiary hearing, correctly awarded damages for attorney fees expended to mitigate damages and for the damages resulting from the lost counterclaim. But the court applied an incorrect causation standard to the McCartys' claim for damages in the amount of the default judgment entered against them as a result of the attorney's negligence. In the absence of evidence to demonstrate that the McCartys would have prevailed in the underlying action, or would have incurred a judgment in the underlying action in an amount less than the default judgment, the evidence is insufficient to show that Pedraza's conduct caused the McCartys to incur the amount of the entire default judgment as damages. We therefore reverse that part of the judgment that awards those damages and remand the case for rehearing under the correct causation standard.

## I. FACTS

{¶ 2}    In April 2006, the McCartys, owners of ABA Insurance Agency of Springfield, Inc., sold their insurance agency's entire book of business to Gary R. Gorby & Associates, L.L.C. Included in the sale agreement (the "Asset Purchase Agreement") is a non-compete agreement that prohibits the McCartys from competing against Gorby. Almost two years after the sale, Gorby filed an action against the McCartys for breach of the non-compete agreement. In February 2008, the McCartys retained Pedraza to represent them in the Gorby action.

{¶ 3}    The McCartys had homes in both Ohio and Florida (and appear to have opened another insurance agency in Florida), and they tried to avoid service of process. At the latest, they were served in the Gorby action on August 27, 2008. The deadline date to file an answer came and went without Pedraza ever filing anything in court. Finally, almost a year-and-a-half later, in

January 2010, the trial court, on Gorby's motion, entered default judgment against the McCartys for $151,259.79 in damages and attorney's fees. The court later granted the McCartys Civ.R. 60(B) relief based on excusable neglect for Pedraza's conduct, but in Gorby's appeal, we reversed, leaving the default judgment against the McCartys intact. *See Gary R. Gorby & Assoc., L.L.C. v. McCarty*, 2d Dist. Clark No. 2010 CA 71, 2011-Ohio-1983.

{¶ 4}    The McCartys then filed a malpractice action against Pedraza, claiming legal malpractice, breach of contract, and unjust enrichment. On the McCartys' motion, the trial court entered partial summary judgment on liability issues and ordered a hearing on damages. After the hearing, the court entered judgment against Pedraza for $275,825.29 plus interest and costs. The court awarded the McCartys $1,320 for attorney fees paid to Pedraza for work that he did not complete; $68,645.50 for their attempt to mitigate the default judgment and their pursuit of the malpractice action against Pedraza; $54,600 for their lost counterclaim against Gorby; and $151,259.79 for the default judgment entered against them in the Gorby action.

{¶ 5}    Pedraza appealed.

## II. ANALYSIS

{¶ 6}    Pedraza assigns error to the entry of partial summary judgment and to part of the damage award. "To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997), syllabus. Pedraza contends that the court should not have entered summary

judgment on duty and breach. He also contends that the McCartys failed to prove that his duty-breaching conduct caused them to suffer the $151,259.79 loss. Lastly, Pedraza contends that the McCartys' breach-of-contract and unjust-enrichment claims should have been dismissed as duplicative of the malpractice claim.

## A. The Duty and Breach

{¶ 7}     The first assignment of error alleges that the trial court erred by entering partial summary judgment on the liability issues of duty and breach. Under Civ.R. 56(C), summary judgment is proper if it is shown "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 8}     "'The duty of an attorney to his client is to "* * * exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to be ordinarily and reasonably diligent, careful, and prudent in discharging the duties he has assumed."'" *Yates v. Brown*, 185 Ohio App.3d 742, 2010-Ohio-35, 925 N.E.2d 669, ¶ 17 (9th Dist.), quoting *Palmer v. Westmeyer*, 48 Ohio App.3d 296, 298, 549 N.E.2d 1202 (6th Dist.1988), quoting 67 Ohio Jurisprudence 3d, Malpractice, Section 9, at 16 (1986). Rule of Professional Conduct 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." A comment to this rule explains that "[d]elay and neglect are inconsistent with a lawyer's duty of diligence, undermine public confidence, and may

prejudice a client's cause. Reasonable diligence and promptness are expected of a lawyer in handling all client matters and will be evaluated in light of all relevant circumstances. * * *" Comment 3, Prof.Cond.R. 1.3. Given these conduct standards, it follows that "'attorneys are expected to keep themselves advised of the progress of their cases.'" *Yoder v. Thorpe*, 10th Dist. Franklin No. 07AP-225, 2007-Ohio-5866, ¶ 13, quoting *Metcalf v. Ohio State Univ. Hosp.*, 2 Ohio App.3d 166, 168, 441 N.E.2d 299 (10th Dist.1981); *Glick v. Glick*, 133 Ohio App.3d 821, 832, 729 N.E.2d 1244 (8th Dist.1999) (quoting the same).

**{¶ 9}** Pedraza says in his affidavit that he did not file an answer because the McCartys never notified him "as agreed that they had been served with the complaint, nor did they provide [him] with a copy of same." Pedraza Affidavit, ¶ 5. After he agreed to represent the McCartys, says Pedraza, "and for considerable time thereafter," they avoided service of the summons and complaint in the underlying action. *Id*. at ¶ 3. He and David McCarty discussed this fact several times, says Pedraza, and Pedraza "stressed to McCarty that when he and/or his wife were served with the complaint at their Florida home or elsewhere McCarty should notify [Pedraza] immediately, inform him of the date service was effected and provide him with a copy of the complaint." *Id*. Pedraza says that he was not aware that they had been served with the complaint "until after the default judgment was filed in early 2010." *Id*. at ¶ 6. David McCarty, though, says in his affidavit that he "advised Pedraza, and Pedraza was aware, that I had been served with a copy of the Complaint in the Gorby Suit." McCarty Affidavit, ¶ 5.

**{¶ 10}** The latest date on which the McCartys were served is August 27, 2008.[1] Shortly

---

[1] In our *Gorby* decision, we said that "[a]fter multiple unsuccessful attempts, service of the complaint was perfected on the McCartys on August 27, 2008." *McCarty*, 2011-Ohio-1983, at ¶ 16. However, the record reveals arguably successful earlier service.

before this date, David McCarty and Pedraza exchanged emails. On July 16, 2008, McCarty sent Pedraza an email saying, "I am at home here in Springfield and my daughter just called me from Florida. She received the court packets for my wife and I in the regular mail at my office. I will be here in Springfield for probably two more weeks. * * * How do you want me to handle this? * * *." The following month, on August 20, McCarty sent Pedraza another email. This one said: "Two weeks ago (or longer) I received via regular mail the packets for my wife and I. I kept them and did not return them. Yesterday, I received notice that I had certified mail from the court, for the same thing. My office (daughter) did not sign for them and returned them and I was not aware of this until I came in today. Can you clarify any of this[?]" The same day that Pedraza received the August email, he sent this reply: "At this point we want for you to get served. If your office will go ahead and sign upon any subsequent delivery and if you will let me know the date that happens we can proceed."

{¶ 11}   After the email exchanges and before default judgment was entered, there were two more communications between Pedraza and David McCarty. In March 2009, McCarty sent Pedraza an email telling him about some of Gorby's activities and asking Pedraza to "check this out and let me know what is going on." And in September 2009, McCarty faxed Pedraza a letter and two documents, one of which was a copy of a form in which McCarty surrendered his Ohio insurance-sales license. Pedraza billed the McCartys twice in 2009 for work he did in their case. In August, according to one bill, Pedraza "[r]eview[ed] written narrative and attached documentation received from client regarding Gorby suit." And in September, according to another bill, Pedraza "[r]eview[ed] fax received from client regarding his surrender of agency license."

{¶ 12} Pedraza acknowledged at his deposition that sending a complaint and summons by ordinary mail may be sufficient to obtain service. McCarty told Pedraza twice–in both the July and August emails–that he had received packets from the court in the mail. These emails indicate strongly that the McCartys may have been served. As an attorney, Pedraza knew that default judgment is a potential consequence to a party who fails to file a timely answer. Pedraza did nothing to investigate to see if service had, in fact, been obtained. Furthermore, by the time McCarty faxed Pedraza in September 2009, it had been well over a year since Pedraza asked the McCartys to notify him as soon as they had been served. The McCartys had advanced payment for Pedraza's attorney fees yet Pedraza egregiously neglected the McCartys' affairs by letting over a year go by without at least checking the Gorby case's docket. *Compare Yeschick v. Mineta*, 675 F.3d 622, 630 (6th Cir.2012) (saying that counsel knew that filing would be made in the case if he failed to respond to discovery requests and knew the discovery cut-off date, yet failed to check the docket for almost six months, during which time the cut-off date came and went).

{¶ 13} From the time that the McCartys were undoubtedly served, let alone the earlier time when they were likely served, sixteen months passed without Pedraza ever checking the docket or otherwise inquiring about service. Pedraza's failure to keep himself advised of the case's progress for such an extended length of time constitutes a lack of diligence, a lack of prudence, and an "untenable" neglect of the McCartys' affairs, *compare Disciplinary Counsel v. Travis*, 101 Ohio St.3d 322, 2004-Ohio-785, 804 N.E.2d 969, ¶ 11 ("An attorney's neglect of even one client's affairs is untenable."). Construing the evidence most strongly in Pedraza's favor, it appears that reasonable minds can conclude only that Pedraza had a duty to the

McCartys and that he breached it.

{¶ 14}   The first assignment of error is overruled.

## B. The Causal Connection

{¶ 15}   The trial court awarded the McCartys $151,259.79 as damages for the default judgment entered against them in the Gorby case. Pedraza alleges in the second assignment of error that the court erred by awarding this amount. He contends that the McCartys failed to present sufficient evidence of a causal connection between his duty-breaching conduct and this loss.

### 1. The applicable causation standard

{¶ 16}   We must first determine the legal malpractice causation standard that applies here. The McCartys contend that the proper standard is the "some evidence" standard established in *Vahila*, 77 Ohio St.3d 421, 674 N.E.2d 1164. Pedraza, conversely, contends that the proper standard is the case-within-a-case doctrine as applied in *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173.

{¶ 17}   The some-evidence standard applies in cases in which a plaintiff's damage or loss has been suffered "regardless of the fact that [the plaintiff] may be unable to prove that [he] would have been successful in the underlying matter(s) in question." *Vahila* at 427. In such a case, the plaintiff need provide only "some evidence of the merits of the underlying claim." *Id*. at 428. In *Vahila*, the plaintiffs sued their attorneys after the attorneys represented them in several civil and criminal matters. The plaintiffs claimed that the attorneys' failure to properly disclose matters related to, and the consequences of, various plea bargains and settlement arrangements resulted in losses of $100,000 and lost profits of at least $200,000. The *Vahila* Court held,

"[b]ased on the theory that plaintiffs proposed, * * * that 'given the facts of [the] case, [the plaintiffs] have arguably sustained damage or loss regardless of the fact that they may be unable to prove that they would have been successful in the underlying matter(s).'" *Environmental Network* at ¶ 14, quoting *Id*. at 427.

{¶ 18} In *Environmental Network*, "the Supreme Court focused on the need to link the attorney's action (or inaction) to the adverse result." *Gijbertus D.M. van Sommeren v. Gibson*, 2013-Ohio-2602, 991 N.E.2d 1199, ¶ 30 (6th Dist.). The *Environmental Network* Court said that the case-within-a-case doctrine applies if the theory of the malpractice case places the merits of the underlying litigation directly in issue. *Environmental Network* at ¶ 17-18. In this type of case, said the Court, "it is insufficient for the plaintiff to present simply 'some evidence' of the merits of the underlying claim." *Id*. at ¶ 19; *see also Gijbertus* at ¶ 32 ("After *Environmental Network*, the demonstration of causality in legal malpractice cases requires more than just 'some evidence' to proximately relate the specific act or omission that is held up as the attorney's breach of duty to the client's damages."). "[T]he plaintiff must establish that he would have been successful in the underlying matter." *Id*. The plaintiffs in *Environmental Network* sued their attorney after the attorney settled the underlying action instead of trying it, claiming that they would have had a better outcome if the matter had gone to trial. Unlike the *Vahila* plaintiffs, said the Court, the plaintiffs in *Environmental Network* "could recover only if they could prove that they would have succeeded in the underlying case and that the judgment would have been better than the terms of the settlement." *Id*. at ¶ 18. The Court concluded that "the theory of this malpractice case places the merits of the underlying litigation directly at issue because it stands to reason that in order to prove causation and damages, appellees must establish that appellant's actions resulted in settling

the case for less than appellees would have received had the matter gone to trial." *Id*.

{¶ 19} The McCartys contend that *Environmental Network* governs only in settlement cases. But we have declined to limit it this way and have applied the case's rationale when a plaintiff claimed a different more favorable outcome. In *Pierson v. Rion*, 2d Dist. Montgomery No. 23498, 2010-Ohio-1793, the plaintiff claimed that his attorney's failure to request a jury trial and to appear at the plaintiff's assault trial caused him (the plaintiff) "to incur damages in the form of costs associated with hiring new attorneys in the assault matter." *Pierson* at ¶ 38. "Put another way," we said, "had [his attorney] fulfilled what [the plaintiff] classifies as [the attorney]'s 'duties' by performing these acts, [the plaintiff] would not have incurred the additional attorney fees which comprise his damages in the malpractice action." *Id*. "Unavoidably linked to this argument," we noted, "is the notion that [the plaintiff] would have achieved a more favorable outcome in the assault case and avoided the appeal had [his attorney] personally appeared or demanded a jury trial on [the plaintiff]'s behalf." *Id*. Despite the factual differences, we concluded, *Environmental Network* was on point and its rationale applied. *Id*. at ¶ 37.

{¶ 20} Here, the McCartys claim that Pedraza's duty-breaching conduct resulted in the default-judgment loss of $151,259.79. Their claim inextricably links Pedraza's conduct directly to this loss: the outcome of the Gorby action, with respect to the McCartys' liability to Gorby, would have been more favorable if Pedraza had not breached his duty. *Compare Pierson* at ¶ 39 (finding that the plaintiff's causation argument was "inextricably linked to the outcome of his assault case"). The case-within-a-case doctrine therefore applies here.

### 2. Application of the case-within-a-case doctrine

{¶ 21} A legal-malpractice plaintiff must prove a causal connection between the

defendant-attorney's duty-breaching conduct and the plaintiff's claimed loss or damage. The "'but for' test of causation * * * is the standard test for establishing cause in fact [, which] * * * is distinct from proximate, or legal, cause." (Citations omitted.) *Ackison v. Anchor Packing Co.*, 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, ¶ 48. "[A] defendant's conduct is a cause of the event (or harm) if the event (or harm) would not have occurred but for that conduct; conversely, the defendant's conduct is not the cause of the event (or harm) if the event (or harm) would have occurred regardless of the conduct." *Anderson v. St. Francis St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84-85, 671 N.E.2d 225 (1996), citing Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on the Law of Torts*, 266 (5th Ed.1984).

{¶ 22} Here, with regard to the element of damages in question, the McCartys must prove that but for Pedraza's duty-breaching conduct they would not have suffered their claimed loss. But what is their loss? The McCartys contend that their loss is the entry of default judgment against them. But the loss that they claim, and that the trial court awarded them, is not necessarily the $151,259.79 that the default judgment obligates them to pay Gorby. The causation issue here is whether but for Pedraza's duty-breaching conduct the McCartys would be liable to Gorby for $151,259.79. Accordingly, our inquiry is whether, after viewing the evidence in the light most favorable to the McCartys, any reasonable trier of fact can find that but for Pedraza's duty-breaching conduct the McCartys would not be liable to Gorby for any amount. *See State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

{¶ 23} Little testimony on this issue can be found in the record before us. At his deposition, Pedraza was asked what theories or defenses he was going to assert for the McCartys in the case filed by Gorby. Pedraza replied, "Well, essentially that Mr. McCarty had not breached

the noncompete provisions of the asset purchase agreement for, there was litigation between Gary Gorby, and I believe it was maybe a couple of nieces of Mr. McCarty's who were alleged to have indirectly on Mr. McCarty's behalf conducted business which was alleged to be in breach of that agreement. Mr. McCarty was not brought into that suit, and that was the basis of the defense, that there was not a breach of the agreement." (Depo. Tr. 32). Pedraza was also asked about the purchase agreement's arbitration provision, which provides that "[a]ll disputes arising under this Agreement, which are not settled within thirty (30) calendar days after they arise, shall be settled by arbitration * * *," Asset Purchase Agreement, ¶ 19. Pedraza was asked whether he was going to assert the arbitration provision as a defense. Pedraza answered, "I'm not sure whether it's labelled as a defense per se. It would have been brought to the attention to the court, yes." (Depo. Tr. 32). At the damages hearing, the McCartys' attorney asked David McCarty whether the $151,259.79 default judgment was still pending against him, and McCarty said that it was. The attorney pertinently asked the McCartys' expert only about whether the default judgment would have been rendered: "[W]ith respect to this matter is it your professional opinion that had Mr. Pedraza filed an answer and sought arbitration in the Gorby matter that the default judgement that was rendered $[151],259.79 would not have been rendered by this Court?" (Damages Tr. 29), which question the expert answered affirmatively.

**{¶ 24}** All that the above evidence establishes is that but for Pedraza's duty-breaching conduct default judgment would not have been entered. The evidence does not establish that but for Pedraza's conduct the McCartys would not be liable to Gorby for $151,259.79.

**{¶ 25}** The McCartys' arguments suggest that if Pedraza had asserted the arbitration provision in the Gorby action, the trial court would have dismissed the action, precluding any

liability to Gorby. This is not necessarily true. Assuming no breach of duty and that Pedraza successfully asserted the arbitration provision, the arbitrator could have awarded Gorby some amount on his claim and thereby imposed liability on the McCartys. To prove their claimed $151,259.79 loss under the case-within-a-case doctrine, the McCartys had to show that there was no merit whatsoever to Gorby's claim such that an arbitrator would not have awarded Gorby anything. They failed to do so.

{¶ 26} A reasonable mind cannot find from the evidence that but for Pedraza's duty-breaching conduct the McCartys would have no liability on Gorby's claims. The McCartys thus failed to establish a causal connection between Pedraza's duty-breaching conduct and the $151,259.79 loss.

{¶ 27} As to the appropriate remedy, it appears that the trial court incorrectly applied the some-evidence standard instead of the case-within-a-case doctrine. The court does not explicitly refer to the some-evidence standard in its partial-summary-judgment entry. But the court "adopts the reasoning set out in plaintiffs' memorandum." Entry (Sept. 11, 2012). And the plaintiffs' memorandum, along with their reply memorandum (and their argument here), indicates that the McCartys were operating under the some-evidence standard. That an incorrect standard was applied likely affected the type and amount of evidence that the McCartys presented at the damages hearing. They are thus entitled to a rehearing under the correct standard on the causal connection between Pedraza's duty-breaching conduct and their liability to Gorby. Proof that the McCartys would have prevailed in their defense against Gorby, or that they would only be subject to a judgment of some amount less than the default judgment is necessary.

### C. Breach-of-Contract and Unjust Enrichment Claims

**{¶ 28}** Pedraza also alleges in the second assignment of error that the trial court should have dismissed the McCartys' breach-of-contract and unjust-enrichment claims. He contends that these claims are subsumed under the malpractice claim. We agree.

> "An action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice * * *, regardless of whether predicated upon contract or tort or whether for indemnification or for direct damages. * * * Malpractice by any other name still constitutes malpractice. As stated in *Richardson v. Doe* (1964), 176 Ohio St. 370, 199 N.E.2d 878, malpractice consists of 'the professional misconduct of members of the medical profession and attorneys.' Such professional misconduct may consist either of negligence or of breach of the contract of employment. It makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice."

*Pierson*, 2010-Ohio-1793, at ¶ 14, quoting *Muir v. Hadler Real Estate Mgmt. Co.*, 4 Ohio App.3d 89, 89-90, 446 N.E.2d 820 (10th Dist.1982). The McCartys' claims for breach of contract and unjust enrichment are not based on conduct distinct from the conduct supporting their legal-malpractice claim. In the complaint, all three claims are based on the same duty-breaching conduct–Pedraza's failure to represent the McCartys' interests in the Gorby action. The breach and unjust-enrichment claims therefore should have been dismissed.

**{¶ 29}** Nevertheless, because the damages are the same, the failure to dismiss the claims did not prejudice Pedraza. So this error is not reversible.

**{¶ 30}** The second assignment of error is sustained in part and overruled in part.

**{¶ 31}**  The trial court's judgment is reversed as to the $151,259.79 damage award; the rest of the judgment is affirmed. This case is remanded for the sole purpose of holding a hearing consistent with the standard set forth in this opinion on the causal connection between Pedraza's duty-breaching conduct and the amount of damages resulting from the McCartys' liability to Gorby.

. . . . . . . . . . . . .

FAIN, J., concurs.

FROELICH, P.J., dissenting in part and concurring in part:

**{¶ 32}**  While I agree that a jury's finding that Pedraza was negligent would be supported by the evidence on this record, I disagree with the majority's conclusion that, construing the evidence most strongly in Pedraza's favor, reasonable minds could only conclude that he did not exercise the knowledge, skill, and ability ordinarily possessed by lawyers similarly situated. Therefore, I would reverse the partial summary judgment on liability.

**{¶ 33}**  Otherwise, I concur with the analysis of the damages issues.

. . . . . . . . . .

Copies mailed to:

Daniel C. Harkins
Miguel A. Pedraza
Hon. Douglas M. Rastatter