[Cite as *Westgate Ford Truck Sales v. Ford Motor Co.*, 2014-Ohio-5429.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 101073 and 101136**

**WESTGATE FORD TRUCK SALES, ET AL.**

PLAINTIFFS-APPELLEES

vs.

**FORD MOTOR COMPANY**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-02-483526

**BEFORE:**   S. Gallagher, J., Celebrezze, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**   December 11, 2014

**ATTORNEYS FOR APPELLANT**

Irene Keyse-Walker
Benjamin C. Sasse
Tucker Ellis L.L.P.
950 Main Avenue
Suite 1100
Cleveland, OH    44113-7213

Brian D. Boyle
Jonathan Hacker
Rakesh Kilaru
O'Melveny & Myers, L.L.P.
1625 Eye Street, N.W.
Washington, DC 20006

Clay A. Guise
Dykema Gossett L.L.P.
39577 Woodward Ave.
Suite 300
Bloomfield Hills, MI   48304

**ATTORNEYS FOR APPELLEES**

James A. Pikl
Scheef & Stone, L.L.P.
2601 Network Blvd., Suite 102
Frisco, TX 75034

Douglas R. Cole
Organ Cole & Stock, L.L.P.
1335 Dublin Road
Suite 104D
Columbus, OH   43215
John A. Corr
Stephen A. Corr
Stark & Stark
777 Township Line Road
Suite 120
Yardley, PA   19067

Robert M. Foote
Craig S. Mielke
Foote, Mielke, Chavez & O'Neil, L.L.C.

10 West State Street
Geneva, IL 60134

James A. Lowe
Dennis P. Mulvihill
Lowe Eklund Wakefield Co., L.P.A.
610 Skylight Office Tower
1660 West Second Street
Cleveland, OH   44113

Dennis G. Pantazis
Wiggins Childs Quinn & Pantazis, L.L.C.
The Kress Bldg.
301 Nineteen Street North
Birmingham, AL   35203

SEAN C. GALLAGHER, J.:

{¶1} Ford Motor Company ("Ford") appeals from the decision of the trial court granting a judgment notwithstanding the verdict in favor of Westgate Ford Truck Sales, Inc. ("Westgate"), individually and on behalf of a plaintiff class, upon liability for a breach of contract claim. The trial court overturned a jury verdict in Ford's favor upon all claims and ordered a new damages-only trial after granting Westgate judgment on liability. For the following reasons, we reverse the decision of the trial court and reinstate the judgment in Ford's favor upon all claims.

{¶2} We are no strangers to this dispute between Westgate and Ford. At this point, the facts underlying the breach of contract claim are largely undisputed. *Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 96978, 2012-Ohio-1942 ("*Westgate II*"), citing *Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 86596, 2007-Ohio-4013 ("*Westgate I*"). Westgate was a Ford medium and heavy duty truck dealer until Ford ceased wholesaling that line in 1997. The market differed from the retail automobile market. Sometime in the early 1980s, Ford introduced a Competitive Price Assistance ("CPA") program, part of which permitted dealers to petition Ford for an individual discount off the wholesale listed price of a truck in order to combat market competition. The owner of Westgate purchased the dealership in 1987 after the CPA program, in one form or another, had been in operation for several years.

{¶3} Westgate took exception to the so-called appeal level CPA, after participating in the program for over ten years, because in order to obtain a discount under the appeal level CPA, the dealer was required to "submit pricing information, including desired profit on a vehicle." *Westgate II* at ¶ 3. Ford did not inform other dealers of the amount of any discount provided to another dealer. Westgate alleged the appeal level CPA specifically violated the terms of the Standard Franchise Agreement ("SFA") that Ford used with all its medium and heavy duty truck

dealers.   The SFA is governed by Michigan law.   The pertinent part of paragraph 10 of the SFA provided that

> Sales of COMPANY PRODUCTS by the Company to the Dealer hereunder will be made in accordance with the prices, charges, discounts and other terms of sale set forth in price schedules or other notices published by the Company to the Dealer from time to time in accordance with the applicable HEAVY DUTY TRUCK TERMS OF SALE BULLETIN or PARTS AND ACCESSORIES TERMS OF SALE BULLETIN.

The trial court originally granted summary judgment in Westgate's favor, holding that "Westgate showed that the CPA program, through its scheme of unrealistically high published wholesale prices and secretive unpublished discounts, systematically violated the Paragraph 10 requirement that Ford sell medium and heavy trucks to dealers at prices and discounts that were published in accordance with all dealer Terms of Sale Bulletins."   The trial court then set the matter for a trial on damages.

{¶4} The trial court entered a verdict in Westgate's favor, after the first trial and in consideration of the class-wide damages, totaling nearly two billion dollars.   In *Westgate II*, a panel of this court reversed the trial court's decision granting partial summary judgment, determining that paragraph 10 of the SFA is ambiguous and Ford's interpretation of the terms suggesting the CPA program complied with paragraph 10 was reasonable.   *Westgate II* at ¶ 22.   The verdict was vacated as a result.

{¶5} On remand, Westgate's breach of contract claim proceeded to a second jury trial that resulted in a general verdict in Ford's favor upon all claims.   Dissatisfied with the outcome, Westgate filed a motion for judgment notwithstanding the verdict ("JNOV"), or in the alternative, a motion for a new trial.   The trial court granted Westgate's motion for JNOV, pursuant to Civ.R. 50(B), entered judgment in Westgate's favor upon liability for the breach of

contract claim, and set the damages issue for a third trial. This time, the trial court determined that Ford breached the contract as a matter of law by "withholding the final appeal level CPA price the customer would pay from the dealer until Ford knew the retail price and the profit available in the retail sale and only then communicating the price to the dealer." The trial court further determined that the "breach was not related to any interpretation of paragraph 10."

{¶6} Westgate's motion for a new trial in the alternative to the JNOV was never decided. We note, however, that at the oral argument upon Westgate's motion, the trial court appeared to base its oral decision on a weight-of-evidence analysis, the underpinning of a Civ.R. 59(A)(6) motion for new trial. In the written judgment entry, the trial court specifically premised its decision on Civ.R. 50(B), entered judgment on liability in Westgate's favor, and was silent as to the motion in the alternative for a new trial.

{¶7} Ford appealed, claiming the trial court erred in granting Westgate's motion for JNOV. Ford also claimed that Westgate's action is time-barred and that the class should have been decertified. We agree that the trial court erred in granting the JNOV and entering judgment in favor of Westgate. Ford's secondary assignments of error are therefore moot.

{¶8} An appellate court reviews a trial court's ruling on a motion for judgment notwithstanding the verdict de novo. *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173. The same standard applies to both motions for judgment notwithstanding the verdict and motions for directed verdict. *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976); *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033. Civ.R. 50(A)(4) provides:

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds

could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

*See also Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 29-30. Neither the weight of the evidence nor the credibility of the witnesses is to be considered in ruling upon the motion. *Id.*; *see also Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679, 1998-Ohio-602, 693 N.E.2d 271.

{¶9} As the trial court recognized in its decision granting Westgate a JNOV, the issue to be resolved by the jury at trial was whether "Ford breached its duty to sell trucks at published prices as required" by the SFA. In fact, in instructing the jury, the parties agreed that Westgate's position was that Ford breached its duty under paragraph 10 to sell trucks at prices and discounts "set forth in price schedules or other notices published in accordance with the truck terms of sale bulletins." Tr. 3534:10-18. According to Westgate, this meant the jury had to determine whether the phone calls, faxes, or emails after the fact constituted prices or discounts published in accordance with the bulletins. Tr. 3642:1-9.

{¶10} The JNOV is entirely premised on the trial court's belief that Ford breached paragraph 10 of the SFA by withholding the final appeal level CPA price from the dealer until Ford determined the dealer's profit, irrespective of the parties' interpretation of the ambiguous phrases contained in that clause. In other words, according to the trial court, the phrase "published * * * in accordance with the applicable heavy duty truck terms of sale bulletin" meant, as a matter of law, that Ford was contractually bound to provide the appeal level CPA price earlier even if the phrase "publication in accordance" with the truck bulletins was interpreted, as Ford claimed, to permit the appeal level CPA program as it operated.

{¶11} The publication requirement is the only aspect of paragraph 10 that addresses how, and thus when, Ford is duty-bound to provide Westgate with the pricing information. Neither party identified any other relevant provision of the SFA. This exact premise was rejected by this court. The dissent in *Westgate II* would have determined that Ford breached the SFA as a matter of law by not providing the final pricing "in advance to all dealers," which includes Westgate. *Westgate II*, 2012-Ohio-1942, ¶ 42 (Jones, J., dissenting). This proposition was necessarily rejected by the majority's conclusion that the pertinent clause was ambiguous, both in need of interpretation and not capable of resolution as a matter of law.

{¶12} In *Westgate II*, a panel of this court specifically determined that paragraph 10 was ambiguous because "it is unclear what Paragraph 10 mean[t] when it refer[red] to 'other notices' and in its requirement that publication [was] made 'in accordance with' the truck terms of sale bulletin." *Id.* at ¶ 19. As part of that decision, the panel concluded that Ford's interpretation of the ambiguous language, that the appeal level CPA program complied with paragraph 10, was a reasonable interpretation, especially pertinent in light of the parties' course of conduct. *Id.* at ¶ 22. Importantly, the Ohio Supreme Court denied the discretionary appeal. *Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, 133 Ohio St.3d 1489, 2012-Ohio-5459, 978 N.E.2d 909. We agree with Ford's argument that the trial court's decision granting the JNOV contravened the law of the case.

{¶13} "A trial court may not vary the mandate of an appellate court, but is bound by that mandate on the questions of law decided by the reviewing court." *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320, 323, 649 N.E.2d 1229 (1995). The trial court ignored this court's decision holding that Ford's interpretation of the ambiguous publication requirement in paragraph 10, permitting every aspect of the appeal level CPA program, was a reasonable one

necessitating resolution by the trier of fact. It follows that Ford did not breach the SFA as a matter of law under its interpretation of the ambiguous language and the JNOV decision to the contrary was in error.

{¶14} Further, nothing at trial could alter this determination. The ambiguity of a contract is a question of law. *Michael A. Gerard, Inc. v. Haffke*, 8th Dist. Cuyahoga No. 98488, 2013-Ohio-168, ¶ 11, citing *Progress Properties, Inc. v. Baird & Patterson*, 8th Dist. Cuyahoga Nos. 70286 and 70287, 1997 Ohio App. LEXIS 4717 (Oct. 23, 1997). "A contract is ambiguous when it is susceptible to more than one reasonable interpretation." *Id.*, citing *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 177, 556 N.E.2d 1186 (1990). Because the *Westgate II* court determined that paragraph 10 was ambiguous, including with respect to the publication requirement, it could not be determined as a matter of law that Ford breached the SFA through providing the final appeal level CPA pricing in the manner it did. According to the *Westgate II* court, Ford's breach hinged on the parties' interpretation of ambiguous contractual language. The trier of fact needed to resolve the ambiguity in the language to determine whether the parties intended the SFA to allow the appeal level CPA program as Ford implemented it, especially in consideration of Westgate's course of conduct in participating in the program.[1]

{¶15} The trial court erred in determining that Ford breached that provision as a matter of law by providing the final appeal level CPA price in the manner it did. The publication

---

[1] To the extent that the trial court's JNOV involved weighing the evidence of the parties' intent in declaring that Westgate's evidence substantially outweighed Ford's on the same, the court also erred. A court is not permitted to assess the credibility of witnesses or weigh evidence in granting a JNOV or a directed verdict. *Texler*, 81 Ohio St.3d 677, 679, 1998-Ohio-602, 693 N.E.2d 271.

requirement was deemed ambiguous based on the reasonableness of Ford's interpretation of the terms of the agreement, which allowed the appeal level CPA program to operate as implemented. Accordingly, we sustain Ford's first assignment of error. The trial court's decision granting Westgate's JNOV motion is reversed.

{¶16} Inasmuch as the trial court may have conditionally granted Westgate's motion for a new trial, pursuant to Civ.R. 50(C) as advanced in the alternative to the JNOV, Westgate's arguments are without merit for two reasons. First, we cannot convert the trial court's JNOV into a judgment granting a new trial in the scope of our current appellate review. The trial court denied Westgate's Civ.R. 59 motion for a new trial in its silence. Any order granting a motion for a new trial must be in writing. Civ.R. 59(A). The court's final judgment entry is silent with respect to the motion for a new trial, and therefore, the oral pronouncement was insufficient. Westgate never appealed, or otherwise assigned error to, the trial court's error in failing to comply with Civ.R. 50(C) by conditionally ruling on the motion for a new trial advanced in the alternative. *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 32.

{¶17} Second, even if we could discern from the judgment entry specifically granting the JNOV that the trial court would have conditionally granted the motion for a new trial based on its statements that the "jury clearly lost its way in its deliberation as the evidence cannot sustain the verdict," and that Westgate's evidence "substantially outweighed" any of Ford's evidence, both statements arguably enunciating the standard of a motion for new trial pursuant to Civ.R. 59(A)(6), the court's decision was incorrectly premised on the belief that the course of conduct evidence was only pertinent to Ford's affirmative defenses.

{¶18} The trial court held that Westgate's evidence of the parties' intent "substantially outweighed" any evidence Ford relied on that the course of conduct of the parties supported the last-minute publication of the final appeal level CPA price in the manner provided to Westgate. The trial court based its decision on the determination that Ford's course of conduct evidence only supports Ford's affirmative defenses, "but that evidence does not inform the inquiry as to the intent of the parties in the contract." Westgate, in essence, is arguing that the stated intent of an ambiguous contract trumps the parties' course of conduct following consummation of the agreement. If that were the case, ambiguous language would never be resolved through evidence of the parties' course of conduct or performance.

{¶19} As even the jury was rightfully instructed, "[t]he law is clear that where the language of the contract is ambiguous, the court can look to such extrinsic evidence as the parties' conduct, the statements of its representatives, and past practice to aid in interpretation." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 470, 663 N.W.2d 447 (2003). Ford and Westgate's statements are only one part of the equation. The jury was free to consider the parties' course of conduct throughout the ten years the contract bound Ford and Westgate. The trial court incorrectly applied the law by failing to consider the evidence of the course of performance as it related to the parties' interpretation of paragraph 10, and therefore, any weighing of evidence it undertook in deciding that Ford's evidence of the parties' intent was substantially outweighed by Westgate's contradictory evidence was in error. The court excluded relevant evidence and then deemed Ford's remaining evidence insufficient to sustain the verdict.

{¶20} The jury was free to deem Westgate's evidence of its interpretation of the ambiguous language — that Ford's delayed publication, or failure to "publish" the prices at all, violated the publication requirement in paragraph 10 — as incredible based on its course of

conduct in actively participating in the appeal level CPA program. Even if we deemed the trial court's statements as conditionally granting the motion for a new trial, the trial court abused its discretion by excluding relevant evidence, heard by the jury, from its consideration before declaring Ford's evidence insufficient to sustain the judgment.

{¶21} Accordingly, the trial court's decision granting the JNOV is reversed and the jury verdict in Ford's favor upon all claims is reinstated.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR