Environmental Network Corporation et al., Appellees,
v. Goodman Weiss Miller, L.L.P., Appellant, et al.

[Cite as *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.,* 119 Ohio St.3d 209, 2008-Ohio-3833.]

(No. 2007–0739—Submitted April 22, 2008—Decided August 6, 2008.)

O'Connor, J.

{¶ 1} We are asked to determine the quantum of evidence that a plaintiff must produce in order to establish causation in a legal-malpractice case in which the sole theory advanced is that the plaintiff would have received a better outcome if the underlying case had been tried to its conclusion rather than settled.

{¶ 2} We hold that when a plaintiff premises a legal-malpractice claim on the theory that he would have received a better outcome if his attorney had tried the underlying matter to conclusion rather than settled it, the plaintiff must establish that he would have prevailed in the underlying matter and that the outcome would have been better than the outcome provided by the settlement. In other words, the "case-within-a-case doctrine" is the appropriate tool for analyzing the underlying claim in the matter before us today.

{¶ 3} For the following reasons, we hold that appellees, Environmental Network Corporation, Environmental Network and Management Corporation, and John J. Wetterich, did not satisfy their burden in the trial court and that therefore, the trial court should have granted a judgment notwithstanding the verdict in favor of appellant, Goodman Weiss Miller, L.L.P. Accordingly, we reverse the judgment of the court of appeals, which had affirmed the trial court judgment in favor of appellees.

## I. Relevant Background

{¶ 4} The underlying case dates back to appellees' attempt to acquire the San–Lan Landfill from Hocking Environmental in 1995. At that time, appellees entered into a contract with Hocking Environmental under which appellees were paid to operate the landfill, and they were given an option to purchase the landfill.

{¶ 5} After signing this agreement, appellees entered into discussions regarding the purchase of a company called TNT Rubbish Disposal, Inc. ("TNT"). The agreement between appellees and TNT provided that if appellees could build up TNT's sales, appellees had the option to buy TNT.

{¶ 6} During this period, appellees also entered into a contract with Waste Management of Ohio ("WMO") under which appellees received a loan from WMO to continue the development of the San–Lan Landfill in exchange for providing WMO discounted disposal rates.

{¶ 7} Appellees' deals with TNT and WMO eventually soured, and appellees brought suit against TNT and its owners in 1998.[1] TNT filed a counterclaim, and WMO eventually intervened and filed a complaint asserting claims against appellees and TNT. If proven, WMO's claims against appellees were worth approximately $3 million. TNT then filed a counterclaim against WMO. Likewise, appellees filed a counterclaim against WMO. In addition, several of appellees' creditors filed creditor bills so that if appellees were successful, any judgment proceeds would be used to first pay off the creditors' judgments against appellees. These creditors' claims totaled approximately $750,000. In the aggregate, appellees alleged losses totaling almost $5.4 million, but faced a potential setoff of approximately $3.75 million.

{¶ 8} By the time the underlying matter came to trial, appellant represented appellees. On the second day of trial, the parties settled.[2] The settlement

---

1. *Environmental Network Corp. v. TNT Rubbish Disposal, Inc.* (Mar. 19, 1998), Cuyahoga C.P. No. 351105.

2. The jury's verdict in the legal-malpractice case, finding that appellant had committed malpractice in handling the underlying matter, is not before us. Thus, for the purposes of this case, appellant's malpractice has been established, and our focus is on causation and damages.

agreement erased appellees' debt to WMO and transferred $40,000 to appellees to apply toward the legal fees they owed to appellant; appellees did not pay anything out of pocket to settle the case.

{¶ 9} Nearly a year after the trial in the underlying matter, appellees filed the legal-malpractice case against appellant that is now before us. Appellees claimed that appellant's malpractice resulted in a coerced settlement and that appellees would have achieved a better result if the underlying case had been tried to its conclusion.

{¶ 10} The malpractice action went to trial, and the jury found in favor of appellees and awarded them damages in the amount of $2,419,616.81. Afterward, appellant moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. Applying its interpretation of our decision in *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, the trial court denied appellant's motion under the belief that appellees had satisfied their burden of establishing proximate causation by producing "some evidence" of the merits of their claims in the underlying action.

{¶ 11} Appellant appealed this order, along with the jury verdict, to the Eighth District Court of Appeals. The appellate court affirmed the trial court's judgment.

{¶ 12} Appellant then appealed to this court, and we granted jurisdiction over appellant's lone proposition of law—"In a legal malpractice case in which the plaintiff contends that he would have achieved a better result in [the] underlying litigation but for his attorney's malpractice, the plaintiff must prove he in fact would have obtained a better result, and what that result would have been, to establish the proximate cause and damages elements of the malpractice case."

## II. Analysis

{¶ 13} Any discussion of the evidence necessary to establish legal malpractice in Ohio must begin with *Vahila*. In that case, we held that "[t]o establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Id., 77 Ohio St.3d 421, 674 N.E.2d 1164, at syllabus.

{¶ 14} In *Vahila*, the plaintiffs' lawsuit arose from the defendants' conduct in representing the plaintiffs in several civil matters and in representing Terry Vahila with respect to criminal charges and in an investigation of her by the Ohio Department of Insurance. Id., 77 Ohio St.3d at 422, 674 N.E.2d 1164. The claimed malpractice consisted of defendants' "failure * * * to properly disclose

all matters and/or legal consequences surrounding the various plea bargains entered into by Terry Vahila and the settlement arrangements agreed to by [plaintiffs] with respect to the several civil matters." Id. at 427, 674 N.E.2d 1164. The plaintiffs alleged losses of $100,000 and lost profits of at least $200,000. Id. at 422, 674 N.E.2d 1164. Based on the theory that plaintiffs proposed, we held that "given the facts of [the] case, [plaintiffs] have arguably sustained damage or loss regardless of the fact that they may be unable to prove that they would have been successful in the underlying matter(s)." Id. at 427, 674 N.E.2d 1164.

{¶ 15} Thus, we recognized that "the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case." Id., 77 Ohio St.3d at 427–428, 674 N.E.2d 1164. The *Vahila* court determined that "depending on the situation, [a plaintiff may be required] to provide some evidence of the merits of the underlying claim," but declined to "endorse a blanket proposition that requires a plaintiff to prove, *in every instance,* that he or she would have been successful in the underlying matter." (Emphasis added.) Id. at 428, 674 N.E.2d 1164.

{¶ 16} The language quoted above shows that the court rejected a wholesale adoption of a "but for" test for proving causation and the mandatory application of the "case-within-a-case doctrine." The doctrine, also known as the "trial-within-a-trial doctrine," provides that "[a]ll the issues that would have been litigated in the previous action are litigated between the plaintiff and the plaintiff's former lawyer, with the latter taking the place and bearing the burdens that properly would have fallen on the defendant in the original action. Similarly, the plaintiff bears the burden the plaintiff would have borne in the original trial; in considering whether the plaintiff has carried that burden, however, the trier of fact may consider whether the defendant lawyer's misconduct has made it more difficult for the plaintiff to prove what would have been the result in the original trial." Restatement of the Law 3d, Law Governing Lawyers (2000) 390, Section 53, Comment b.

{¶ 17} However, in holding that not *every* malpractice case will require that the plaintiff establish that he would have succeeded in the underlying matter, the *Vahila* court necessarily implied that there are *some* cases in which the plaintiff must so establish. This is one such case.

{¶ 18} Here, appellees' sole theory for recovery is that if the underlying matter had been tried to conclusion, they would have received a more favorable outcome than they obtained in the settlement. Therefore, unlike the plaintiffs in *Vahila,* who sustained losses regardless of whether their underlying case was meritorious, appellees here could recover only if they could prove that they would have succeeded in the underlying case and that the judgment would have been better than the terms of the settlement. Thus, the theory of this malpractice case

places the merits of the underlying litigation directly at issue because it stands to reason that in order to prove causation and damages, appellees must establish that appellant's actions resulted in settling the case for less than appellees would have received had the matter gone to trial.

{¶ 19} This type of legal-malpractice action, then, involves the case-within-a-case doctrine. That is, the plaintiff must establish that he would have been successful in the underlying matter.[3] In this type of action, it is insufficient for the plaintiff to present simply "some evidence" of the merits of the underlying claim. To permit the plaintiff to present merely some evidence when the sole theory is that the plaintiff would have done better at trial would allow the jury to speculate on the actual merits of the underlying claim. Thus, in the case sub judice, appellees had the burden of proving by a preponderance of the evidence that but for appellant's conduct, they would have received a more favorable outcome in the underlying matter. Of course, the burden of proof for establishing a case within a case is the same burden the plaintiff would have had to satisfy if the underlying case had gone to trial. See Restatement of the Law 3d, Law Governing Lawyers (2000) 390, Section 53, Comment b.

{¶ 20} The necessity of requiring that the case within a case be established under these circumstances is shown by the fact that if the broad language of *Vahila* were to apply here, it would unfairly reduce appellees' burden for proving causation. If we required only a showing of "some evidence," we would adopt a nebulous standard that provides no clarity or guidance to the bar and to the public. A "some evidence" approach in these types of cases would eviscerate the established rule that a plaintiff must establish by a preponderance of the evidence that defendant's actions were the proximate cause of plaintiff's losses. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 423 N.E.2d 467.

{¶ 21} The trial court and court of appeals in this case erred in failing to recognize that *Vahila*'s refusal to adopt a blanket rule of law requiring the case-within-a-case approach was not a wholesale rejection of that doctrine. When a plaintiff is claiming he would have been better off had the underlying matter been tried rather than settled, the standard for proving causation requires more than just some evidence of the merits of the underlying suit.

---

3. In applying the case-within-a-case approach, we join those jurisdictions that have employed a similar approach in similar situations. See, e.g., *Tri–G, Inc. v. Burke, Bosselman & Weaver* (2006), 222 Ill.2d 218, 226, 305 Ill.Dec. 584, 856 N.E.2d 389; *Bowers v. Dougherty* (2000), 260 Neb. 74, 85, 615 N.W.2d 449; *Thomas v. Bethea* (1998), 351 Md. 513, 533, 718 A.2d 1187; *Haberer v. Rice* (S.D.1994), 511 N.W.2d 279, 285; *Shaw v. Dept. of Admin.* (Alaska 1993), 861 P.2d 566, 573; *Fitzgerald v. Walker* (1992), 121 Idaho 589, 594, 826 P.2d 1301; *Fishman v. Brooks* (1986), 396 Mass. 643, 647, 487 N.E.2d 1377; *Lewandowski v. Continental Cas. Co.* (1979), 88 Wis.2d 271, 277, 276 N.W.2d 284; *McKenna v. Forsyth & Forsyth* (2001), 280 A.D.2d 79, 82, 720 N.Y.S.2d 654; *Tarleton v. Arnstein & Lehr* (Fla.App.1998), 719 So.2d 325, 328.

214

{¶ 22} Our inquiry, however, is not at an end. The matter before us presents another question of law—Did the trial court err in denying appellant's motion for judgment notwithstanding the verdict? See *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph three of the syllabus ("A motion for directed verdict or a motion for judgment notwithstanding the verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence").

{¶ 23} In addressing this question, we must test whether the evidence, construed most strongly in favor of appellees, is legally sufficient to sustain the verdict. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 504 N.E.2d 19. Because this is a question of law, it requires a de novo review. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶ 24} Appellees assert that even under a case-within-a-case analysis, they satisfied their burden. Applying the standards outlined above, we find that a review of the record belies this assertion. The evidence, even when construed most strongly in favor of appellees, cannot sustain the verdict.

{¶ 25} Appellees focused primarily on establishing simply a prima facie case of their underlying claims. Thus, as even the trial court acknowledged, the evidence demonstrated merely the existence of a contract between appellees and WMO, the parties' obligations under that agreement, and appellees' alleged losses as a result of WMO's alleged breach. Absent from appellees' case, however, was any evidence as to whether appellees would have had a better outcome had the matter gone to trial. This is the sole theory appellees advanced in the legal-malpractice action, but the evidence is insufficient to support their claim because appellees had to establish more than a prima facie case—they had to establish that they actually would have won their case and that any award for their losses would not have been offset by the competing claims against them. Cf. *Slovensky v. Friedman* (2006), 142 Cal.App.4th 1518, 1528, 49 Cal.Rptr.3d 60 ("Here, though plaintiff won a substantial settlement, she contends defendants' negligence barred her from proving greater damages at trial. But to recover damages at trial, she would have had to defeat the statute of limitations defense. The undisputed facts reveal she could not have done so").

{¶ 26} The testimony from one of appellees' experts revealed that he had not reviewed the pleadings in the underlying case but instead focused his review on the motions for summary judgment and responses thereto. Instead of objectively evaluating the viability of appellees' claims, he merely assumed them as fact. In doing so, he failed to evaluate the legitimacy of all the claims brought against appellees (and, in fact, was not even aware of some of those claims) and how

those claims necessarily affected appellees' likelihood of receiving a better outcome at trial than was secured by the settlement.

{¶ 27} Conversely, appellant elicited testimony showing that appellees had breached the San–Lan Agreement and showing the value of all the claims that had been filed against appellees.

{¶ 28} Although appellees put forth some evidence of the merits of their underlying claim, they failed to establish by a preponderance of the evidence that they would have had a better result if the matter had gone to trial. In fact, the uncontroverted evidence was that the settlement that appellant procured for appellees was very favorable. Thus, there is no reason to believe based on the admitted evidence that a reasonable fact-finder in the underlying matter would have awarded a judgment more favorable than the settlement.

{¶ 29} Appellees, therefore, did not show that but for appellant's malpractice, they would have received a better result if the underlying action had been tried in full. Because appellees failed to prove by a preponderance of the evidence that appellant's malpractice was the proximate cause of any loss, appellant was entitled to a judgment notwithstanding the verdict.

## III. Conclusion

{¶ 30} Applying the standards outlined above, we hold that appellees failed to produce sufficient evidence showing that but for appellant's malpractice, they would have achieved a better result in trying the underlying case to its conclusion. The production of "some evidence" that the underlying claims had merit cannot sustain the jury's verdict. We reverse the judgment of the court of appeals and remand this cause to the trial court to enter an order of final judgment in favor of appellant.

Judgment reversed
and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., concurs in judgment only.

PFEIFER, J., dissents.

———————

**PFEIFER, J., dissenting.**

{¶ 31} I agree with the majority opinion's conclusion that "in holding that not *every* malpractice case will require that the plaintiff establish that he would have succeeded in the underlying matter, the *Vahila* [*v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164] court necessarily implied that there are *some* cases in which the plaintiff must so establish." (Emphases sic.) Majority opinion at ¶ 17. The

syllabus law goes too far, however, essentially requiring proof of a case within a case whenever a plaintiff agrees to a settlement and then alleges attorney malpractice in the underlying case. I believe it is possible for legal malpractice to be so egregious that proof of a case within a case would be unnecessary. This case, in which the attorneys steadfastly refused to continue with trial despite their clients' sincere desire to continue, may be such a case.

{¶ 32} It is not necessary to go that far, however, because given the procedural posture of this case, the appellees, Environmental Network Corporation, Environmental Network and Management Corporation, and John J. Wetterich (collectively "ENC"), need establish only that there was sufficient evidence to defeat a motion for judgment notwithstanding the verdict. I dissent because I believe that the evidence in this case, when construed most strongly in favor of ENC, is sufficient to defeat a motion for judgment notwithstanding the verdict.

{¶ 33} The majority opinion hangs on a thin thread, that ENC did not present "any evidence as to whether [ENC] would have had a better outcome had the matter gone to trial," majority opinion at ¶ 25. This assertion is patently untrue. ENC presented ample evidence of the losses it suffered (the breach by Waste Management of Ohio is manifest), which in aggregate exceeded the claims against ENC. The jury was instructed that "[t]he damages recoverable in a legal malpractice action cannot be remote or speculative." The jury reviewed the evidence before it and determined that ENC had suffered significant losses, and it therefore awarded significant damages. How much more does ENC have to prove? See Barton, Do Judges Systemically Favor the Interests of the Legal Profession? (2008), 59 Ala.L.Rev. 453.

{¶ 34} Like the jury, the trial court, and the court of appeals, I believe that ENC produced, at a minimum, enough evidence to defeat a motion for judgment notwithstanding the verdict. I would affirm the judgment of the court of appeals. Accordingly, I dissent.

---

Levin & Associates Co., L.P.A., Joel Levin, Aparesh Paul, and Christopher M. Vlasich; and James M. Wilsman Co., L.P.A., and James M. Wilsman, for appellees.

Ross, Dixon & Bell, L.L.P., and Richard A. Simpson; and Gallagher Sharp and Monica A. Sansalone, for appellant.

Tucker, Ellis & West, L.L.P., Richard A. Dean, Irene C. Keyse–Walker, and Benjamin C. Sasse, urging reversal for amicus curiae Defense Research Institute.

Reminger & Reminger Co., L.P.A., Amy S. Thomas, and Nicholas Satullo, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Baker & Hostetler, L.L.P., and Wayne C. Dabb Jr., urging reversal for amici curiae Ohio Bar Liability Insurance Company and ProAssurance Corporation.